IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FELICIA FIFFER**                                                                               **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO.: 4:23-cv-233-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [Doc. 1] for judicial review of the Commissioner of the Social Security Administration's denial of a request for Title II and XVI benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge, with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and should be and is hereby **AFFIRMED.**

### Statement of the Case

Plaintiff, Felicia Fiffer, filed an application for Title II and XVI benefits on June 28, 2021, alleging disability beginning January 1, 2020. The Commissioner denied these applications initially and on reconsideration, and on June 1, 2023, the ALJ held a telephonic hearing.

Present at the hearing were Plaintiff, her attorney, and an impartial vocational expert, Don L. Stephens. The ALJ issued an Unfavorable Decision in this cause on July 26, 2023, finding that Plaintiff had not been under a disability from January 1, 2020, the alleged onset date, through the date of the decision. The Unfavorable decision was timely appealed to the Appeals Council, and the Appeals Council affirmed the decision of the ALJ.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's application date, January 1, 2020. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: residuals from leukemia and obesity. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

The ALJ then assessed Plaintiff with the RFC to perform light work, except Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. (Tr. 19). She can frequently balance and climb ramps or stairs. *Id.* She cannot at unprotected heights or near hazardous machinery. *Id.*

The ALJ found that Plaintiff was unable to perform any past relevant work as a home attendant, production assembler, and conveyor feeder/off-bearer. Tr. 236. At step five, the VE testified that given all of these factors the individual would be able to perform the requirements of: office helper (239.567-100), 41,000 jobs in the national economy; shelving clerk (249.687-014) 16,000 jobs in the national economy; and mail clerk (209.687-026), 57,000 jobs in the national economy. Tr. 25, 46.

Accordingly, the ALJ found that Plaintiff was not disabled. On October 12, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**Discussion**

Plaintiff raises two issues on appeal: whether the ALJ erred by failing to properly consider the side effects of Plaintiff's medications; and whether the ALJ failed to properly consider the

2

evidence of the record. Under our standard of review, conflicts in the evidence are for the Commissioner to resolve, and if the Court finds substantial evidence supports the ALJ's decision, the Court must affirm the decision even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Plaintiff cites to *Crowley v. Apfel* and *Brown v. Barnhart* for the proposition that reversible error is committed when an ALJ fails to properly consider the side effects of a plaintiff's medication. [Doc. 18] at 4. At the hearing of this matter, Plaintiff's testimony regarding side effects of her medication was as follows:

> Q: All right, what kind of problems do the side effects cause you?
>
> A: Muscle spasms. Also experiencing as far as the driving too. I have to take Tylenol because I be in pain. Bone pain because of the bone marrow I have pain. The doctor says got to take out the pieces of bone from this. She told me that [INAUDIBLE] would have healed the, you know, the problem so now like if I'm laying too long or standing too long my bone and my waist, everything gets stiff, so I have to move and they constant hurt so I'm constantly taking medications, Tylenol, Advil, something over the counter to try to help. I got appointment coming up to try to see because I go to the pain doctor to get the pain medicine prescribed to help with the pain and it causes further in my hand and my [INAUDIBLE] cramping also in my hand. My hand will cramp up. I can't – I wash dishes – if I'm washing dishes, I can't wash dishes for a straight five minutes. If I had like it just sort of drawn up on their own and they start cramping.
>
> Q: Is that part of the muscle spasms?
>
> A: Yes, ma'am.

Tr. 39-40. Plaintiff argues that the ALJ failed to "address the claimant's ability to sustain concentration, persistence, and/or pace, and stay on task while she is at the workstation due to the side effects of her medications." [Doc. 18] at 5. Plaintiff cites to medical evidence that states "She reports having muscle spasms that are a side effect of her chemotherapy drug." (Tr. 367, 548, 869). The record documents the prescription of this medication and the start of Gleevac 400 mg on February 27, 2020. (Tr. 364). Thus, Plaintiff's argument is that the ALJ fails to give an analysis as

to why she failed to consider any effects of this medication in the RFC or provide an analysis of the medication side effects in her decision.

However, the Commissioner argues that "Even with Plaintiff's complaints of side effects from her medication, the record does not indicate that her alleged side effects actually interfered with her ability to work, particularly for any consecutive twelve-month period. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.505(a); 404.1509, 416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (a claimant's impairments and inability to work must last for a continuous period of at least twelve months)." [Doc. 22] at 3. And while Plaintiff's office visit notes from August 2021, November 2021, and May 2022, document Plaintiff starting on Gleevec 400 mg daily on February 27, 2020, she reported "taking gleevec 400mg without any major side effects," and she reported only experiencing intermittent back spasms. Tr. 364, 369.

According to the Commissioner:

> The ALJ specifically noted that Plaintiff complained of intermittent spasms or cramping in her back and legs, somewhat improved with tonic water, and cramping in her hands. Tr. 22. In an office note from August 10, 2022, she declined therapy for muscle cramps, noting that her "cramps were manageable." Tr. 22, 976. The record also contains no evidence that Plaintiff presented in any distress during treatment visits, other than her initial diagnosis period and during an episode of hydronephrosis in January 2023. Tr. 22. The ALJ observed that she consistently had unremarkable musculoskeletal exams through the relevant period. Tr. 22, 360-414, 449-527, 528-967, 1188-1195. The records do not show that she consistently complained of side effects from her medication.

[22] at 3.

The Court finds the Commissioner's argument persuasive. In her opinion, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. The ALJ's evaluation of the record as a whole in this case is supported by substantial evidence as to this issue.

As to the second issue, the Plaintiff argues that the ALJ erred when she failed to properly consider the evidence of the record, specifically related to the Plaintiff's upper extremity limitations. Here, Plaintiff's argument is that "The ALJ seems to dismiss the fact that Plaintiff has any functional limitations from her upper extremity impairments relying heavily on one isolated office visit from January of 2023 (TR 1198) while failing to consider the treatment notes from the June 19, 2023 (TR 1204), office visit in conjunction with her analysis of this impairment." [Doc. 18] at 7. The ALJ stated as follows with respect to Plaintiff's upper extremity limitations:

> The claimant alleged tendonitis in her bilateral upper extremities, with symptoms including pain. The record shows that the claimant presented to the Greenwood Orthopedic Clinic on January 12, 2023, with complaints of pain in her bilateral elbows beginning approximately two months prior. An examination found tenderness over the lateral epicondyle bilaterally, but the claimant had full range of motion of the elbows, intact sensation, and no acute distress. X-rays of the bilateral elbows were unremarkable. The claimant received a Medrol Dosepak and bilateral tennis elbow braces (Exhibit 11F). The record contains no evidence that the claimant received any additional treatment for elbow pain, and as such, the record contains no evidence that the claimant had symptoms lasting or expected to last for a period of at least twelve months. [emphasis added].

Tr. 18. Plaintiff argues that this assessment of the ALJ's ignores a subsequent office visit that took place on June 19, 2023, wherein the office note stated as follows:

> The patient is a 44-year-old female previously seen for elbow tendonitis. Now with bilateral hand pain, numbness, and tingling, as well as weakness and cramping in her hands. It has been ongoing two months. She rates in 9 out of 10. Nothing has helped to this point. Also right hip pain localized anteriorly at the groin and she feels a pop there, also two months.

Tr. 1204.

To the contrary, the Commissioner argues that simply because it is a diagnosed condition does not mean that the condition would cause limitations that would warrant a finding of a severe impairment. [Doc. 22] at 5, citing 20 C.F.R. §§ 404.1520(c), 416.920(c); 404.1521(a), 416.921(a). Specifically, the ALJ found that "Plaintiff's tendonitis, bilateral conjunctivochalasis, and bilateral

5

hypertensive retinopathy were slight abnormalities having such minimal effect that they would not be expected to interfere with Plaintiff's ability to work, irrespective of age, education, and work experience, and as such were non-severe. Tr. 18; SSR 96-1p and SSR 85-28." [Doc. 22] at 5. The Commissioner argues that the "evidence in the record indicated that these impairments caused no more than minimal functional limitations." [Doc. 22] at 5, citing Tr. 18.

With regard to the ALJ's analysis of the evidence related to Plaintiff's upper extremity limitations, the Commissioner argues that the ALJ considered the June 19, 2023, office visit:

> As noted by the ALJ, on June 19, 2023, Plaintiff complained of hand pain including numbness, tingling, weakness, and cramps beginning approximately two months prior. Tr. 22, 23, 1204. Plaintiff did not allege bilateral elbow pain at this time. A physical exam of the bilateral upper extremities revealed intact sensation to light touch in all nerve distributions. Tr. 1204. Cap refill was less than two seconds. Id. Two positive radial pulse. Id. These were the same findings made by Dr. Culpepper six months earlier in January 2023. Tr. 1198, 1204. However, Dr. Culpepper also found that range of motion to the hands was full, positive Durkan's, and positive Tinel's. Tr. 22, 1204 (emphasis added). These were findings related to her hand complaints. To address the hand complaints, Dr. Culpepper recommended wrist braces to wear at night, a nerve conduction study for carpal tunnel, and Medrol Dosepak. Id.

[Doc. 22] at 7.

In addition to analysis of the June 19, 2023, visit, the ALJ also explicitly considered a January 12, 2023, visit, Plaintiff's testimony regarding tendonitis in her bilateral upper extremities with symptoms including pain, and x-ray results of the bilateral elbows. Tr. 18, 41-42, 1198-99. Then, at the June 1, 2023, hearing, Plaintiff testified to receiving injections, which made the condition "comfortable" and that the bands, or tennis elbow braces, helped "a lot." Tr. 42. As such, the Commissioner argues that the ALJ found that the record contained no evidence that Plaintiff had symptoms lasting or expected to last for a period of at least twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a); 404.1509, 416.909; 404.1520(c), 416.920(c).

Based on the ALJ's review of evidence, he found Plaintiff was limited to light work with

6

frequent balancing and climbing ramps or stairs; occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds; and the inability to work at unprotected heights or near hazardous machinery. Tr. 19, 23. Substantial evidence supports the ALJ's opinion as to this issue, and remand to have the ALJ further discuss the medical evidence would serve no practical purpose and would equate to a "wasteful corrective exercise" when no further findings could be made that would alter the ALJ's decision given the record as a whole. *See Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981). The Court concurs with the Commissioner that in this instance, "Plaintiff has not shown that her upper extremity condition caused greater limitations than the limitations found by the ALJ, and has not shown that her bilateral upper extremity condition prevented her from performing a modified range of light work." [Doc. 22] at 8.

## Conclusion

For the reasons stated above, the Commissioner's decision is hereby **AFFIRMED.**

**SO ORDERED,** this the 12th day of September, 2024.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE